JOE WILLIAMS and FRED HOUSEWERT v. THE HONORABLE NATHAN MAYO, as Custodian of State Prison.

172 So. 86.
Opinion Filed January 19, 1937.

872

*Martin & Martin,* for Petitioners;

*Cary D. Landis,* Attorney General, and *Roy Campbell,* Assistant Attorney General, for Respondent.

BROWN, J.—Petitioners were convicted of armed robbery in the Criminal Court of Record of Palm Beach County in February, 1935, and sentenced to the penitentiary for life.

The information upon which the verdict and judgment of conviction were based charged that the defendants, petitioners here, did, on January 7, 1935, "unlawfully and feloniously, while armed with a dangerous weapon, to-wit, a pistol, a better description of which is to the County Solicitor unknown, did then and there an assault make in and upon one R. R. Montgomery, and him, the said R. R. Montgomery, did then and there put in bodily fear and danger of his life, and did then and there from the person, and custody of the said R. R. Montgomery and against the will of the said R. R. Montgomery, unlawfully and feloniously steal, take and carry away Two Thousand Dollars, lawful money of the United States of America, of the value of Two Thousand Dollars, good and lawful money of the United States of America, of the property, goods and chattels of the said R. R. Montgomery, with intent then and there, if resisted in the perpetration of their unlawful act, to kill and murder the said R. R. Montgomery, contrary to the form of the Statute in such cases made and provided and against the peace and dignity of the State of Florida."

The statute, Section 7157 C. G. L. (Section 5055 of Rev. Gen. Statutes of 1920 as amended by Chapter 13792, Acts

of 1929) begins with the words: "Whoever assaults another and feloniously robs, steals and takes from his person or custody, money or other property which may be the subject of larceny," etc. In this habeas corpus proceeding the contention is that the information failed to charge any offense against the laws of this State because the word "rob," which appears in the statute, was entirely omitted therefrom, whereas it should have been included in the information just before the word "steal," and that for this reason, on this collateral attack by habeas corpus, the judgment of conviction should be held void and the petitioners discharged from the custody of the respondent, the custodian of the State penitentiary.

This contention, though ably and earnestly argued, is in our opinion untenable. In spite of this departure from the usual and generally approved custom in drawing informations of using substantially the language of the statute prohibiting the crime or prescribing the punishment, which is permitted by Section 8368 C. G. L., nevertheless the information as drawn charges every element of the crime of armed robbery contained in said Section 7157 C. G. L., and every element of common law robbery as well. Said Section 8368 C. G. L. provides that every indictment shall be held good which charges the crime "substantially in the language of the statute prohibiting the crime or prescribing the punishment, if any such there be, or, if at common law, so plainly that the nature of the offense charged may be easily understood by the jury." And even on motion to quash or in arrest of judgment, Section 8369 provides that no indictment shall be quashed on account of defect in form, or for misjoinder of offenses, or for any cause whatever, unless the indictment is "so vague, indistinct, and indefinite as to mislead the accused and embarrass him in the prepa-

ration of his defense or expose him after conviction or acquittal to substantial danger of a new prosecution for the same offense."

In Stephens v. State, 92 Fla. 43, 109 So. 303, this Court said that the gist of the offense of armed robbery is "the felonious taking by the accused, being at the time armed with a dangerous weapon, of money or property from the person of another by violence or putting in fear." And the common law definition of robbery is "the felonious taking of money or goods of value from the person of another, or in his presence, against his will, by violence, or putting him in fear." It is quite generally held by the courts, in construing statutes on the subject, that it will not be presumed, in the absence of language to the contrary, that the Legislature intended to change the nature of the crime as understood at common law. 23 R. C. L. 1139.

It is also contended that the information, at most, merely charges larceny, and then rebuts the charge by charging the violent taking by persons armed, resulting in charging no crime whatever. But this, too, is an utterly untenable contention. The statute, by using the words "steals and takes" recognizes that larceny is one of the elements of robbery. Thus, in 54 C. J. at page 1011, it is said:

"In a generic sense larceny and robbery are but different degrees of the same crime, robbery being merely an aggravated form of larceny or theft, the aggravation consisting in the use of actual or constructive violence against the person of the victim. In other words, robbery may be briefly defined as a forcible larceny from the person. While robbery has been termed an aggravated form of larceny, it is a distinct crime. There can be no robbery without violence, and no larceny with it. Therein lies the principal distinction between larceny, including larceny from the person

and robbery. A further distinction is that the crime of larceny may or may not include a taking from the person or presence, whereas the crime of robbery must include such a taking." * * *

"Generally speaking, the elements of robbery are the taking, of personal property or money, from the person or presence of another, by actual or constructive force, without his consent, and with the *animus furandi* or intent to steal. In defining and discussing the crime of robbery the foregoing elements, in whole or in part, often have been stated by the courts. * * *

"While distinct therefrom, every robbery includes a larceny, and may include an assault or assault and battery."

And in 23 R. C. L., 1139-1141, the following appears:

"The distinction, however, between larceny and robbery is a nice one. . The criterion which distinguishes these offenses is the violence which precedes the taking. There can be no robbery without violence, and there can·be no larceny with it. It is violence that makes robbery an offense of greater atrocity than larceny. Robbery may thus be said to be a compound larceny composed of the crime of larceny from the person with the aggravation of force, actual or constructive, used in the taking." * * *

"The taking and carrying away of the property is one of the essential elements of the offense of robbery. To constitute the offense there must be an actual taking of some personal property from the victim. In other words, there must first be a larceny—a felonious taking."

Petitioners rely upon the case of Richards, *et al.,* v. Mayo, 108 Fla. 308, 146 So. 94, as supporting their position, but a mere reading of the headnotes shows that that case is not in point here. Indeed the information here under at-

tack would doubtless have been held good, and properly so, on direct attack by motion to quash, before going to trial, if such motion had been made; and certainly at this late day, nearly two years after the judgment of conviction was rendered, it should be held good on collateral attack by habeas corpus, for it certainly charges all the essential elements of the crime of armed robbery substantially in the language of the statute, or in language of equivalent import. This is all that the law requires. Tilley v. State, 21 Fla. 242; Schley v. State, 48 Fla. 53, 37 So. 518; Robinson v. State, 69 Fla. 521, 68 So. 549; Copeland v. State, 78 Fla. 483, 83 So. 290; Harrell v. State, 79 Fla. 220, 83 So. 922; Habersham v. State, 80 Fla. 240, 85 So. 655.

Nor is the case of Croft v. State, 109 Fla. 188, 146 So. 649, in point here. There the accused was charged in the disjunctive with taking from the person *or* custody, whereas here the information charges in the conjunctive that the petitioners did take from the person *and* custody. It is hardly possible for a person to have money on his person and not have it in his custody. Therefore the information is not duplicitous on the ground that it charges two separate crimes in the alternative in one and the same count, and the form of the charge in this particular, as here used, has never been criticized by this Court.

Furthermore, this Court has repeatedly held that a writ of habeas corpus cannot be used as a substitute for a motion to quash or writ of error.

Without reflecting in the least upon the sincerity of counsel, in his zeal for his clients, in making the arguments above alluded to, to the impartial and disinterested mind, it would be a grim travesty upon the administration of justice in this State if judgments of conviction could be set aside and persons adjudged guilty of atrocious crimes turned

loose upon society for such highly technical and immaterial irregularities in the choice of the language used in indictments or informations as those insisted upon in this case.

The motion to quash the return of the respondent is accordingly denied and the petitioners remanded to the respondent's custody.

ELLIS, C. J., and WHITFIELD, TERRELL, BUFORD and DAVIS, J. J., concur.